1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| COLUMBIA CASUALTY COMPANY, an Illinois corporation, <br><br>                     Plaintiff, <br><br> v. <br><br> GORDON TRUCKING, INC., a Washington corporation, and DOES 1 through 10, <br><br>                   Defendants. <br> ——————————————————— <br> GORDON TRUCKING, INC., a Washington corporation, and DOES 1 through 10, <br><br>              Counterclaimants, <br><br> v. <br><br> COLUMBIA CASUALTY COMPANY, an Illinois corporation; AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, an Alaska corporation; GREAT WEST CASUALTY COMPANY, a Nebraska corporation; and DOES 1 through 10, <br><br>              Counterdefendants. <br> ——————————————————— | Case No.: 09-CV-05441-LHK <br><br> ORDER GRANTING IN PART AND DENYING IN PART AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT <br><br> ORDER GRANTING COLUMBIA CASUALTY COMPANY'S REQUEST FOR JUDICIAL NOTICE |

On August 12, 2010, Counterdefendant and Crossclaimant American International Specialty Lines Insurance Company ("AISLIC") moved for partial summary judgment against

1

<div style="font-weight:bold; writing-mode:vertical">United States District Court<br>For the Northern District of California</div>

Plaintiff, Counterdefendant, and Crossdefendant Columbia Casualty Company ("Columbia").  Dkt. No. 53 ("Mot. for Summ. J.").  Columbia opposes the motion.  Dkt. No. 68 ("Opp'n").  Along with its opposition, Columbia filed a request for judicial notice.  Dkt. No. 70.  On November 23, 2010, the Court held a hearing on these matters.  For the foregoing reasons, AISLIC's motion is GRANTED in part and DENIED in part, and Columbia's request for judicial notice is GRANTED.

## I. BACKGROUND

This dispute is fundamentally a disagreement among insurers over coverage obligations.

In its action in this Court, Columbia seeks a declaration that it has no obligation to pay $5 million in insurance coverage for liability resulting from a personal injury lawsuit against its insured, Gordon Trucking.  Columbia claims that Gordon Trucking breached a provision in its policy by entering into a settlement without Columbia's consent.  This provision, known as a "no voluntary payments" or NVP provision, states: "With respect to any claim or suit to which this insurance applies, no insured will, except at the insured's own cost, make any payment, assume any obligation, or incur any expense other than for first aid, without our consent."  Dkt. No. 57 ("Allison Decl."), Ex. 2, at 16.  According to Columbia, this breach releases Columbia from any obligation to contribute to the settlement.

AISLIC, also Gordon Trucking's insurer, disputes Columbia's claim and seeks to compel Columbia to furnish its share of the settlement.  AISLIC claims that Columbia cannot rely on the NVP provision to avoid payment because Columbia was not prejudiced by the settlement and because Columbia breached its duty to conduct a meaningful investigation of the underlying liability claim.

### A. Gordon Trucking and Its Insurance Coverage

Gordon Trucking, Inc. is a trucking company based in Seattle, Washington.  Opp'n 2.  In May of 2007, Gordon Trucking operated around 1,300 trucks.  Dkt. No. 69 ("Collins Decl."), Ex. A ("Gordon Dep."), at 10.  Although Gordon Trucking operates nationwide, its trucks haul primarily in the western United States.  Dkt. No. 73, Ex. A ("Gordon Dep."),[1] at 11.  Around twenty-five to

---

[1] Both parties submitted excerpts from the October 6, 2010 deposition of Steve Gordon.  This Court will refer to both as "Gordon Dep." with page numbers referring to the page numbers listed on the deposition transcript.

United States District Court
For the Northern District of California

1  thirty percent of loads hauled by Gordon Trucking trucks in 2007 originated in or were destined to

2  sites in California, *id.* at 12, and around twenty-five to thirty percent of Gordon Trucking's revenue

3  in 2007 involved loads that either originated in or were delivered to sites in the state of

4  Washington, *id.* at 11-12.  Gordon Trucking has approximately 2,000 employees based in twenty to

5  twenty-five states.  Gordon Dep. 16.  Around 800 of Gordon Trucking's employees are based in

6  Washington, and around 300 to 350 are based in California.  *Id.*

7      For the relevant policy period, Gordon Trucking possessed $50 million in liability

8  insurance.  Opp'n 2.  This coverage consisted of several layers.  Gordon Trucking's primary insurer

9  was Great West Casualty Company.  Mot. for Summ. J. 4.  The Great West policy provided $5

10  million in coverage, including a $500,000 deductible.  *Id.*  For liability exceeding the Great West

11  policy, Columbia's policy provided an additional $5 million in coverage.  *Id.*  Directly excess to

12  Columbia was AISLIC's $20 million policy.  *Id.*  Finally, Fireman's Fund issued an additional $20

13  million policy that was excess to all the other policies.  *Id.*

14      Gordon Trucking procured its insurance through Brown & Brown, an insurance brokerage

15  firm located in Tacoma, Washington.  Allison Decl. ¶ 3.  David Allison, an account executive at

16  Brown & Brown during the relevant period, was responsible for assisting Gordon Trucking in

17  obtaining liability insurance.  *Id.* ¶ 4.  He negotiated and accepted such policies from his office in

18  Tacoma, Washington.  *Id.*  In placing the Columbia policy, Allison dealt with Tri-City Brokerage,

19  an agent and wholesaler located in Chicago, Illinois that communicated with Columbia.  *Id.* ¶ 10;

20  Dkt. No. 69, Ex. B, at 27.  The final policy that Columbia issued to Gordon Trucking listed Gordon

21  Trucking's address as Pacific, Washington and bore a stamp indicating that the policy complied

22  with Washington law.  Allison Decl., Ex. 2 at 8, 11.

23      **B.  The Underlying Cause of Liability and Notice to Insurers**

24      On May 3, 2007, Drew Bianchi suffered a catastrophic brain injury in an automobile

25  accident that occurred on a California highway.  A Salazar Equipment Company truck crossed the

26  center line of the highway, hit a Gordon Trucking truck traveling in the opposite direction, and then

27  struck an automobile in which Bianchi was a passenger.  Dkt. No. 56 ("Calladine Decl."), at ¶ 4.

28

1 │ Gordon Trucking's truck did not hit Bianchi's vehicle, and the California Highway Patrol report

2 │ placed fault for the accident on the Salazar driver.  Collins Decl., Ex. D.

3 │      On January 28, 2008, Bianchi filed suit.  He named Salazar and its driver, Gordon Trucking

4 │ and its driver, and the State of California as defendants.  Calladine Decl. ¶ 8.  Gordon Trucking

5 │ notified AISLIC of the accident and the lawsuit on July 8, 2008 and again on August 5, 2008, at

6 │ which time it also notified Columbia and National Union.  Collins Decl., Exs. C, D.  The notifying

7 │ letters included copies of the California State Patrol Report and Investigation and informed

8 │ AISLIC and Columbia that, based on initial discovery, Bianchi's injuries appeared severe.  *Id.*  In

9 │ addition, the letters stated that Gordon Trucking's outside counsel Richard Alley, whose name and

10 │ contact information were listed, would provide a more detailed description and assessment of

11 │ Bianchi's claim.  *Id.*  Beginning in August of 2008, Alley began sending monthly litigation status

12 │ reports to Gordon Trucking, Great West, and AISLIC.  Collins Decl. ¶ 14.  Alley, however, never

13 │ sent further information to Columbia.

14 │      On August 14, 2008, James Hoefer, a Columbia employee, responded to Gordon Trucking's

15 │ notification.    After spending approximately thirty minutes reviewing Gordon Trucking's

16 │ notification and without consulting any other individuals, Hoefer spent a few minutes composing a

17 │ response that contained the following statements:

18 │      [Columbia Casualty] has determined that the nature of the incident alleged by
19 │      [Bianchi] is unlikely to impact [Columbia Casualty's] excess policy limits should a
     formal claim or suit be pursued and the matter will be designated "Record Only".

20 │ 
21 │      If you, your insurance broker and/or the underlying insurance carrier(s)
     subsequently obtain any information which indicates that [Bianchi's] injuries may
22 │      impact [Columbia Casualty's] excess policy limits and/or if the underlying
     insurance carrier(s) disclaims coverage for this claim or their limits of coverage
23 │      become eroded or exhausted, please so notify the undersigned immediately.

24 │ Collins Decl., Ex. F; Dkt. No. 55 ("Kaplan Decl."), Ex. 2 ("Hoefer Dep."), at 51.  On September 2,

25 │ 2008, Gordon Trucking's general counsel resent the notification letter to Columbia and left a

26 │ voicemail for Hoefer.  Dkt. No. 73 ("Kaplan Supp. Decl."), Ex. B, at 42-45.  Columbia did not

27 │ respond to these communications.

28 │

4

On August 22, 2008, Jenna Marzorati, an AISLIC employee, responded to Gordon Trucking's notice letter.  Her letter included the following statements:

> Based upon the information received and the investigation performed, it is our opinion that this claim does not present an exposure to the excess policy. Therefore, we are closing our file.
>
> Notwithstanding, if during the ongoing handling of this claim, you become aware of a change of status in one or more of the following areas, immediately notify us so we may reconsider the need to actively monitor further developments:
>
> > Venue
> > Plaintiff's Injury
> > Substitution of Plaintiff's Counsel
> > Punitive damage exposure
> > Notification of Trial Date

Collins Decl., Ex. E.  Marzorati sent this letter after consulting with a claims representative at Great West.  Collins Decl., Ex. G.  Great West's representative had informed Marzorati that he did not believe Bianchi's claim exceeded the $5 million primary insurance layer.  *Id.*

On September 19, 2008, Alley sent an e-mail to Marzorati confirming receipt of her August 8, 2008 response letter.  In his e-mail, Alley suggested that Marzorati leave the file open until she reviewed further information that he would be forwarding.  Collins Decl., Ex. J.  On October 2, 2008, after she received more information from Alley, Marzorati recommended that Bianchi's claim be forwarded to the Complex Unit for further investigation and handling.  Collins Decl., Ex. I.  She based the claim's change in status on the serious nature of Bianchi's injuries and on the fact that Salazar only had $1,000,000 in insurance coverage.  *Id.*

### C.  The *Bianchi* Litigation and Trial Verdict

Trial in the *Bianchi* action began in late August of 2009.  Dkt. No. 54 ("Roberts Decl."), at ¶ 4.  Prior to trial, Salazar and the State of California settled with Bianchi.  Calladine Decl. ¶ 8. This left Gordon Trucking, its driver Michael Demma, and the Salazar driver as the only defendants at trial.  Also prior to trial, in June 2009, AISLIC retained additional counsel to supplement Gordon Trucking's defense counsel.  In particular, AISLIC retained Guy Calladine, an experienced trial lawyer, to serve as part of the trial counsel team, Calladine Decl. ¶ 3, and further retained the law firm of Horvitz & Levy to assist in developing trial strategies and help evaluate

5

potential appellate issues, Roberts Decl. ¶ 3.  Columbia, however, appears to have been unaware of the trial.  Opp'n 6.

At trial, Bianchi introduced evidence that Demma was using a cell phone, in violation of company policy, at the time of the accident.  Roberts Decl. ¶ 9.  As the trial neared conclusion in mid-September, Gordon Trucking and Bianchi began negotiating a "High/Low" agreement.  *Id.* ¶ 4. The parties reached agreement after jury deliberations had begun but before issuance of a verdict. *Id.* ¶ 5.  In its final form, the High/Low agreement limited Gordon Trucking's exposure to $18 million, even if the actual verdict was higher, and guaranteed Bianchi a payment of $1 million, even if the verdict was for the defense or specified an amount less than $1 million.  *Id.* ¶ 7.  In addition, the parties agreed to waive their appellate rights.  Opp'n 6.

On September 21, 2009, the jury returned a verdict in excess of $49 million.  *Id.* ¶ 8.  The verdict also allocated 35% of the fault to Gordon Trucking.  *Id.*  After accounting for settlement offsets, Gordon Trucking's fault, and California law regarding joint and several liability for economic damages, Gordon Trucking would have owed in excess of $31 million without the High/Low agreement.  *Id.*  With the agreement, Gordon Trucking owed Bianchi $18 million.

### D.  Payment Dispute and the Current Action

On September 22, 2009, Theresa Pruett, Gordon Trucking's general counsel, notified Great West and AISLIC's successor that Columbia had issued a $5 million excess insurance policy to Gordon Trucking.  Opp'n 7.  Subsequently, on September 24, 2009, Gordon Trucking notified Columbia of its responsibility to pay $5 million of the settlement agreement.  Collins Decl., Ex. L. After receiving pre-trial and post-trial reports prepared by Gordon Trucking's counsel, Columbia refused to pay, citing the NVP provision in its policy.  Mot. for Summ. J. 9.  This refusal jeopardized the High/Low agreement because the $18 million was to be paid in installments. Gordon Trucking and Great West paid the first installment of $5 million in December of 2009. Roberts Decl. ¶ 10.  Because Columbia refused to pay the next installment, due in January 2010, AISLIC paid the balance of the settlement amount, subject to a reservation of rights against Columbia.  *Id.* ¶¶ 12-13.  As a condition to this payment, Gordon Trucking assigned to AISLIC all of its contractual rights under the Columbia policy.  Roberts Decl. ¶ 14.

6

Prior to AISLIC's payment, Columbia filed a declaratory relief action against Gordon Trucking seeking a declaration that it had no obligation to pay any portion of the verdict. Mot. for Summ. J. 9. Gordon Trucking removed the case to federal court and counterclaimed against Columbia, AISLIC, and Great West. *Id.* at 10. AISLIC also filed cross claims against Columbia. *Id.* Gordon Trucking and Great West dismissed their claims against each other. Dkt. No. 34. Gordon Trucking and AISLIC also settled their claims. *See* Dkt. No. 71. AISLIC now seeks to compel payment from Columbia under the terms of Columbia's policy with Gordon Trucking. AISLIC's motion for partial summary judgment asks this Court to make certain legal holdings in order to narrow the issues in dispute. Along with its opposition, Columbia filed a request that this Court take judicial notice of certain documents filed with the Court.

## II. LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). FED. R. CIV. P. 56(d) permits a court to render partial summary judgment. *Flintkote Co. v. General Acc. Assur. Co.*, 410 F. Supp. 2d 875, 881 (N.D. Cal. 2006) (citing *State Farm Fire & Cas. Co. v. Geary*, 699 F. Supp. 756, 759 (N.D. Cal. 1987)). "On summary judgment, we must draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520, 111 S. Ct. 2419, 2434-35 (1991) (citation omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

## III. ANALYSIS

AISLIC has moved this Court to hold on summary judgment that (1) Washington law governs the enforcement of the NVP provision; (2) Columbia cannot rely on a breach of the NVP provision to avoid its payment obligation unless it suffered "actual prejudice" as a result of the breach; (3) Columbia has the burden of proving "actual prejudice"; and (4) Columbia breached its duty to investigate the claim that Gordon Trucking submitted to it. In addition, Columbia has

United States District Court
For the Northern District of California

1  requested that this Court take judicial notice of (1) Columbia's November 10, 2009 complaint, Dkt.

2  No. 1-1; (2) Gordon Trucking's First Amended Answer to Columbia, Dkt. No. 9; and (3) AISLIC's

3  Answer to Gordon Trucking's Counterclaims and Crossclaims against Columbia, Dkt. No. 28.  *See*

4  Dkt. No. 70.

5      **A.  Choice of Law**

6      Because a federal court sitting in diversity "must apply the choice of law rules prevailing in

7  the state where the court is located," *Alaska Airlines, Inc. v. United Airlines, Inc.*, 902 F.2d 1400,

8  1402 (9th Cir. 1990) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct.

9  1020, 1021, 85 L. Ed. 1477 (1941)), California choice of law rules will determine what state's law

10  applies to the enforcement of the NVP provision.

11      Where the contract contains no choice of law provision[2] and the case does not present an

12  issue of contract interpretation,[3] California courts apply the governmental interest test to determine

13  which state's law should apply.  *See Washington Mutual Bank, FA v. Superior Court*, 15 P.3d 1071,

14  1080, 24 Cal. 4th 906, 919, 103 Cal. Rptr. 2d 320 (2001).  The purpose of this test is to determine

15  which state's law "most appropriately applies to the issue involved."  *Bernhard v. Harrah's Club*,

16  546 P.2d 719, 720-21, 16 Cal. 3d 313, 128 Cal. Rptr. 215 (1976).  Here, the issue involved is

17  whether Columbia can rely on an NVP provision in its insurance policy to avoid paying its portion

18  of a settlement that Gordon Trucking and other insurers entered into without Columbia's consent.

19  Thus, central to the case is how a state's law enforces NVP provisions.  AISLIC, Gordon

20  Trucking's successor in interest, argues that Washington state law should determine how to enforce

21  the provision.  Columbia, however, claims that California state law more appropriately applies.

22      To determine which law more appropriately applies, the Court will apply the governmental

23  interest test's three-part analysis.

24  _____

25  [2] Columbia previously asserted in its pleadings that the service of suit clause in the Columbia
    insurance policy operated as a choice of law provision.  Mot. for Summ. J. 11 (citing Dkt. No. 13,
    at 10-11).  In California, choice of law provisions are generally enforceable.  *See Nedlloyd Lines*

26  *B.V. v. Superior Court*, 834 P.2d 1148, 1150-51, 3 Cal. 4th 459, 464-65, 11 Cal. Rptr. 2d

27  330 (1992).  Columbia, however, makes no argument in its opposition that the service of suit
    clause is a choice of law provision, Opp'n 7-8, and conceded as much at oral argument.

28  [3] Both parties agree that CAL. CIV. CODE § 1646 determines which state's law governs the
    interpretation of a contract.  Mot. for Summ. J. 13; Opp'n 8.  Because neither party argues that this
    case involves contract interpretation, the Court need not engage in § 1646 analysis.

Case No.: 09-CV-05441-LHK

*United States District Court*
For the Northern District of California

### 1. Material Difference

First, "the foreign law proponent must identify the applicable rule of law in each potentially concerned state and must show it materially differs from the law of California." *Washington Mutual*, 15 P.3d at 1080, 24 Cal. 4th at 919, 103 Cal. Rptr. 2d 320. Both parties agree that California and Washington state laws materially differ on the issue of enforcing NVP provisions. Mot. for Summ. J. 14-15; Opp'n 7-8. In California, courts generally enforce NVP provisions without requiring a showing of prejudice to the insurer. *See Low v. Golden Eagle Ins. Co.*, 110 Cal. App. 4th 1532, 1544, 2 Cal. Rptr. 3d 761, 771 (2003); *Jamestown Builders, Inc. v. Gen. Star Indem. Co.*, 77 Cal. App. 4th 341, 349-50, 91 Cal. Rptr. 2d 514 (1999). Under Washington law, however, the insurer must demonstrate "actual prejudice" before it can enforce an NVP provision. *See Pub. Util. Dist. No. 1 v. Int'l Ins. Co.*, 881 P.2d 1020, 1029 (Wash. 1994).

### 2. Each State's Interest in Having Its Law Applied

Second, if the laws differ materially, the court must "determine what interest, if any, each state has in having its own law applied to the case." *Washington Mutual*, 15 P.3d at 1080-81 (citation omitted). In assessing each state's interest in having its law applied, this Court must examine the policies underlying each state's rule of law. *See Offshore Rental Co., Inc. v. Continental Oil Co.*, 583 P.2d 721, 724-25, 22 Cal. 3d 157, 148 Cal. Rptr. 867 (1978). Washington seeks to ensure that "an insurer cannot deprive an insured of the benefit of purchased coverage absent a showing that the insurer was actually prejudiced by the insured's noncompliance." *Pub. Util. Dist. No. 1*, 881 P.2d at 1029. According to Washington law, "[t]o release an insurer from its obligations without a showing of actual prejudice would be to authorize a possible windfall for the insurers." *Id.* (citing *Salzberg*, 535 P.2d at 819). Thus, Washington's interest in having its law applied to the present case is evident. Columbia's present suit seeks to deny Gordon Trucking, a Washington resident, its maximum possible coverage. Application of Washington's "no prejudice" rule would ensure that Gordon Trucking receives the maximum benefit of its insurance coverage and would prevent any possible windfall for Columbia.

Under California law, "[t]he no-voluntary-payment provision is based on the equitable rule that the insurer is invested with the *complete control and direction* of the defense, and is thus not

9

1      liable for any voluntary payments . . . assumed by the insured without the insurer's consent." *Truck*

2      *Ins. Exchange v. Unigard Ins. Co.*, 79 Cal. App. 4th 966, 981, 94 Cal. Rptr. 2d 516 (2000)

3      (citation, alterations, and quotation marks omitted).  Under this reasoning, California courts hold

4      that saddling an insurer with expenses after first denying it at least some control of the defense is

5      "the antithesis of equity."  *See id.*  Columbia argues that California's policy favoring insurer control

6      of the defense is implicated by the fact that, according to Columbia, AISLIC and Gordon Trucking

7      co-opted Columbia's opportunity to participate in defending the *Bianchi* claim.  Opp'n 10.  Under

8      Columbia's reasoning, because Columbia did not participate in the defense, California has an

9      interest in ensuring that Columbia is not inequitably saddled with expenses made without its

10     consent. *Id.*

11          Even accepting Columbia's claim that it was wrongfully left out of defending the *Bianchi*

12     claim, however, it is unclear why California has an interest in preventing any possible inequity that

13     might be done to Columbia.  Columbia is not a California resident.  Rather, in the instant case,

14     Columbia is an Illinois corporation doing business with a Washington corporation.  Generally,

15     parties seeking to invoke California law have genuine connections to the state.  *See e.g.*, *Bernhard*,

16     546 P.2d at 720, 16 Cal. 3d 313, 128 Cal. Rptr. 215 (applying California law where plaintiff was a

17     California resident injured in California).  Nevertheless, "[a]s the forum state, California has an

18     interest in applying its law to this case."  *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F.

19     Supp. 2d 1183, 1201 (S.D. Cal. 2007) (citing *Rosenthal v. Fonda*, 862 F.2d 1398, 1402 (9th Cir.

20     1988)).  Therefore, a true conflict between the laws of California and Washington exists.

### 3.  Comparative Impairment

22          Finally, "if the trial court determines that the laws are materially different *and* that each

23     state has an interest in having its own law applied," then "the court . . . select[s] the law of the state

24     whose interests would be 'more impaired' if its law were not applied."  *Washington Mutual*, 15 P.3d

25     at 1081, 24 Cal. 4th at 920, 103 Cal. Rptr. 2d 320 (citations omitted).  "[I]n conducting this

26     evaluation the court does not weigh the conflicting governmental interests in the sense of

27     determining which conflicting law manifests the better or the worthier social policy on the specific

28     issue."  *Kearney v. Salomon Smith Barney, Inc.*, 137 P.3d 914, 933, 39 Cal. 4th 95, 123, 45 Cal.

United States District Court
For the Northern District of California

10

1   Rptr. 3d 730, 753 (2006) (quotation marks, alterations and citation omitted). Rather, the court

2   seeks, "to the extent practicable, to achieve the maximum attainment of underlying purpose by all

3   governmental entities." *Id.* at 934, 39 Cal. 4th at 124, 45 Cal. Rptr. 3d at 753.

4       Towards this end, "the trial court must determine the relative commitment of the respective

5   states to the laws involved and consider the history and current status of the states' laws and the

6   function and purpose of those laws." *Washington Mutual*, 15 P.3d at 1081, 24 Cal. 4th at 920, 103

7   Cal. Rptr. 2d at 331. A court may also "consider[] each jurisdiction's relevant contacts with the

8   parties, property and the incident involved," *Costco Wholesale*, 472 F. Supp. 2d at 1198 (citing

9   *Sierra-Bay Fed. Land Bank Ass'n v. Superior Court*, 227 Cal. App. 3d 318, 331, 277 Cal. Rptr. 753

10  (1991)), and "look to the reasonable expectations of the parties as to which state law would govern

11  a dispute between them," *Waggoner v. Snow, Becker, Kroll, Klaris & Krauss*, 991 F.2d 1501,

12  1507 (9th Cir. 1993) (citing *Rosenthal*, 862 F.2d at 1402-03). A thorough consideration of these

13  factors will show that the interests of Washington would be more impaired if its law did not apply.

14              **a.  Commitment, History and Purpose**

15      In California, "[t]he general validity of no-voluntary-payment provisions in liability

16  insurance policies is well-established." *Insua v. Scottsdale Ins. Co.*, 104 Cal. App. 4th 737, 742,

17  129 Cal. Rptr. 2d 138, 141 (2002); *see also Faust v. The Travelers*, 55 F.3d 471, 472 (9th Cir.

18  1995) ("California courts have consistently honored voluntary payment provisions . . . ."); *Raisin*

19  *Bargaining Ass'n v. Hartford Cas. Ins. Co.*, 715 F. Supp. 2d 1079 (E.D. Cal. 2010) (noting that it is

20  a "well settled rule that [NVP] provisions are enforceable under California law"). These provisions

21  apply to "the making of unapproved expenditures in response to a claim or suit, including the

22  payment of a settlement." *OneBeacon America Ins. Co. v. Fireman's Fund Ins. Co.*, 175 Cal. App.

23  4th 183, 95 Cal. Rptr. 3d 808 (2009) (quoting *Belz v. Clarendon America Ins. Co.*, 158 Cal. App.

24  4th 615, 628, 69 Cal. Rptr. 3d 864 (2007)) (quotation marks omitted). California, subject to limited

25  exceptions, enforces NVP provisions without requiring the insurer to show prejudice.[4]   *See*

26  *Jamestown Builders*, 77 Cal. App. 4th at 346-50, 91 Cal. Rptr. 2d 514.

---

[4] AISLIC argues that although California consistently applies its "no prejudice required" rule to pre-tender voluntary payments, it does not apply the rule consistently to post-tender voluntary payments. Mot. for Summ. J. 17. In support, AISLIC cites *Roger H. Proulx & Co. v. Crest-Liners, Inc.*, 98 Cal. App. 4th 182, 119 Cal. Rptr. 2d 442 (2002). Even though the court in *Crest-Liners*

Case No.: 09-CV-05441-LHK

United States District Court
For the Northern District of California

1    California courts enforce NVP provisions to protect an insurer's right to control the defense.

2    *See Tradewinds Escrow, Inc. v. Truck Ins. Exch.*, 97 Cal. App. 4th 704, 710, 118 Cal. Rptr. 2d 561

3    (2002).  California's rule protects an insurer's right to control the defense because it encourages

4    insureds to quickly tender defense to their insurer and discourages insureds from exercising any

5    control of the defense after tender.  *See id.* at 710, 118 Cal. Rptr. 2d 561 (NVP "clauses bar

6    reimbursement for pre-tender expenses based on the reasoning that until the defense is tendered to

7    the insured, there is no duty to defend.") (citation omitted); *Jamestown Builders*, 77 Cal. App. 4th

8    at 346, 91 Cal. Rptr. 2d 514 (NVP provisions "are designed to ensure that responsible insurers that

9    promptly accept a defense tendered by their insureds thereby gain control over the defense and

10   settlement of the claim.").

11   Washington law has a different, yet also long established, focus.  In Washington, an NVP

12   clause is "clearly placed in policies to prevent the insurer from being prejudiced by the insured's

13   actions."  *Public Utility Dist. No. 1*, 881 P.2d at 1029.  With this policy in mind, Washington courts

14   reason that "[t]o release an insurer from its obligations without a showing of actual prejudice would

15   be to authorize a possible windfall for the insurers."  *Id.* (citing *Salzberg*, 85 Wash. 2d at 377, 535

16   P.2d 816).  Thus, Washington courts hold that "an insurer cannot deprive an insured of the benefit

17   of purchased coverage absent a showing that the insurer was actually prejudiced by the insured's

18   noncompliance."  *Id.* (citation omitted).[5]  A Washington federal district court recently documented

19

20   did find that an NVP provision would not bar coverage for payments entered into after notice
     unless the insurer could show prejudice, the case does not stand for the proposition that notice

21   alone changes how California courts enforce NVP provisions.  In *Crest-Liners*, not only had the
     insurer received notice of the potential insured's claim, but the insurer had denied coverage.  *Id.* at

22   200.  Both the California Supreme Court and the California Court of Appeal support the conclusion
     that it is an insurer's denial of coverage, not simply notice, that changes the enforceability of an

23   NVP provision.  *See Gribaldo, Jacobs, Jones & Assocs. v. Agrippina Versicherunges A.G.*, 476
     P.2d 406, 415, 3 Cal. 3d 434, 449, 91 Cal. Rptr. 6, 15 (1970) ("[I]t is only when the insured has

24   requested and been denied a defense by the insurer that the insured may ignore the policy's
     provisions forbidding the incurring of defense costs without the insurer's prior consent . . . .");  *Low*,

25   110 Cal. App. 4th at 1547, 2 Cal. Rptr. 3d 761 (An insured may ignore an NVP provision if "the
     insured has requested and been denied a defense by the insurer.") (quotations and alterations
     omitted).

26   [5] A Washington Court of Appeals decision, also holding that an insurer must show actual prejudice,
     gave another policy reason for Washington's rule: "The purpose of a voluntary payment provision

27   is to 'obviate the risk of a covinous or collusive combination between the assured and the injured
     third party and to restrain the assured from voluntary action materially prejudicial to the insurers

28   contractual rights.'"  *Griffin v. Allstate Ins. Co.*, 29 P.3d 777, 783 (Wash. Ct. App. 2001) (quoting
     *Roberts Oil Co., Inc. v. Transam. Ins. Co.*, 833 P.2d 222, 229 (N.M. 1992)).

12

1  the state's long established commitment to its rule.  *See Axis Surplus Ins. Co. v. James River Ins.*

2  *Co.*, 635 F. Supp. 2d 1214, 1218-19 (W.D. Wash. 2009) ("[C]ourts have repeatedly held that an

3  insured's breach of the duty . . . to refrain from voluntary payments . . . is no basis for denying

4  coverage, unless the insurer can prove actual and substantial prejudice arising from the breach.

5  This basic principle of Washington insurance law should come as no surprise . . . .").

6       Columbia attempts to find fault in Washington's enforcement of NVP provisions because

7  Washington, unlike California,[6] generally enforces notice, cooperation, and no-voluntary payment

8  provisions in an identical manner.  *See Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 191 P.3d 866,

9  876 n.12 (Wash. 2008) (holding that courts "may look to cases dealing with all three types of

10  clauses in [their] analysis of the contours of the 'prejudice' rule") (citation omitted).  Although

11  Columbia, and even California courts, may disagree with this decision, the Court's purpose here is

12  not to choose the law which manifests the better social policy.  *Kearney*, 137 P.3d at 933, 39 Cal.

13  4th at 123, 45 Cal. Rptr. 3d at 753 (citation omitted).  Rather, the Court's goal is to determine

14  Washington's commitment to and purpose in requiring insurers to show prejudice before enforcing

15  an NVP provision.  Washington's reason for treating all three provisions similarly stems from its

16  belief that the three clauses serve the same purpose: "to prevent the insured's actions from

17  prejudicing the insurer."  *Mutual of Enumclaw Ins. Co.*, 191 P.3d at 876 n.12.  The Washington

18  Supreme Court recently showed its commitment to this policy.  *See e.g.*, *Mut. of Enumclaw Ins.*

19  *Co. v. T & G Const., Inc.*, 199 P.3d 376, 383 (Wash. 2008) (holding that an insurer who was on

20  notice and had an opportunity to intervene in settlement negotiations could not avoid payment

21  without showing prejudice).

22       Given that both Washington and California are committed to their respective rules and

23  policies, the Court will analyze the "comparative pertinence" of each state's policy concerns to the

24  immediate case.  *See Offshore Rental*, 583 P.2d at 726 (citation omitted).  California's policy

25  concerns are implicated here because Columbia, though on notice of Bianchi's claim, never

26  received notice of the trial or of the settlement negotiations.  Certainly, Columbia could have more

27  _____

[6] California courts enforce notice and cooperation clauses differently than NVP provisions.  *See*
28  *Unigard*, 79 Cal. App. 4th at 977, 94 Cal. Rptr. 2d at 524 ("[U]nlike a notice provision or a
cooperation clause, a no-voluntary-payment provision can be enforced without a showing of
prejudice.") (citation omitted).

13

United States District Court
For the Northern District of California

1   thoroughly assessed Bianchi's claim and more proactively participated in the litigation.  Columbia,

2   however, had no duty to defend Gordon Trucking and could reasonably have expected, after

3   requesting as much, that Gordon Trucking would alert it of major developments in the case.

4   Moreover, Gordon Trucking's original notice letter did imply that Columbia would receive

5   additional information regarding Bianchi's claim in the future.  Unlike Columbia, AISLIC did

6   receive additional information, and AISLIC's increased involvement in the case appears to have

7   been at least partly a result of this additional information.  Gordon Trucking also never informed

8   Columbia that Gordon Trucking's driver had been using his cell phone at the time of the accident.

9       Furthermore, Columbia alleges that AISLIC and Gordon Trucking each operated, up until

10  the *Bianchi* verdict, under the assumption that AISLIC was the first layer excess insurer.  *See* Dkt.

11  No. 9, at 15; Dkt. No. 28, at 3.  Thus, Columbia was not entirely at fault for not participating in the

12  defense.  As a result, California's policy of protecting an insurer's right to control, or in this case

13  participate in, the defense pertains to this case.  Even though a breach of an NVP provision in

14  California typically occurs "before the insured has tendered the defense to the insurer," *Unigard*,

15  79 Cal. App. 4th at 976, 94 Cal. Rptr. 2d at 523, "the rare case where the insured tenders the

16  defense and then negotiates a settlement on its own, leaving the insurer in the dark," can still

17  constitute a breach, *see Low*, 110 Cal. App. 4th at 1546, 2 Cal. Rptr. 3d 761; *cf. Aerojet-General*

18  *Corp. v. Commercial Union Ins. Co.*, 155 Cal. App. 4th 132, 147, 65 Cal. Rptr. 3d 803, 814-15

19  (2007) (holding that an excess insurer who had no duty to defend and was apprised by its insured

20  of settlement negotiations was not equitably estopped from relying on an NVP provision to deny

21  coverage).

22      Washington's policy concerns are also implicated here.  Columbia does not appear to

23  dispute that its policy covers the damages sought.  Rather, Columbia seeks to avoid payment by

24  relying on the NVP provision in its policy.  To allow Columbia to avoid payment without requiring

25  it to show prejudice would clearly contravene Washington's policy that NVP provisions are only

26  meant to protect insurers from the insured's prejudicial behavior.  Gordon Trucking's primary

27  insurer, Great West, and one of its excess insurers, AISLIC, diligently defended Gordon Trucking

28  in the *Bianchi* matter.   They negotiated a settlement that capped damages at $18 million, which

14

1    was far less than the $31 million the jury verdict would have imposed on Gordon Trucking's

2    insurers.  Moreover, AISLIC participated in the defense voluntarily, which Columbia was never

3    precluded from doing.  Even though Gordon Trucking may have been partially to blame for

4    Columbia's absence from the litigation, excusing Columbia from its portion of the settlement

5    without requiring a showing of prejudice would deny Gordon Trucking its bargained for coverage.

6         Although the comparative pertinence is similar, Washington's policy is more impaired by

7    the facts at hand.  California's policy towards enforcing NVP provisions shows some flexibility

8    when insurers are partially at fault for the insured's payments or when insureds face extenuating

9    circumstances.  *See Unigard*, 79 Cal. App. 4th at 977 n.15, 94 Cal. Rptr. 2d 516 (noting certain

10   exceptions to the prohibition on voluntary payments) (citations omitted); *Jamestown Builders*, 77

11   Cal. App. 4th at 348, 91 Cal. Rptr. 2d 514 (holding that insurer misconduct or nonperformance can

12   also negate an NVP provision) (citation omitted).  Thus, California's rule not only encourages

13   insureds to quickly tender defense, but it also encourages insurers to quickly accept defense duties.

14   *See Belz v. Clarendon America Ins. Co.*, 158 Cal. App. 4th 615, 628, 69 Cal. Rptr. 3d 864 (2007)

15   ("A no-voluntary-payment provision encourages an insurer to act promptly in accepting a tender of

16   defense and thereby gain control over the resolution of the claim.").  Even though Columbia was

17   not completely at fault for its absence from the litigation, it has some responsibility for its absence

18   from the *Bianchi* litigation.  The initial notice letter made it clear that Bianchi had suffered serious

19   injuries and provided contact information for Gordon Trucking's outside counsel.  Columbia had an

20   opportunity to become involved in the litigation, but it voluntarily chose not to participate.

21        Washington, on the other hand, consistently views NVP provisions as protecting insurers

22   only from an insured's prejudicial actions.  To allow Columbia to rely on its policy's NVP

23   provision without showing that Gordon Trucking's actions prejudiced it would clearly contradict

24   the purpose behind Washington's law.  Given that California's rule is not as rigid when applied to

25   facts such as those at issue here, Washington's law would be more impaired if not applied.

26              **b.  Relevant Contacts and Reasonable Expectations**

27        The relevant contacts and reasonable expectations of the parties also favor applying

28   Washington law.  Both Columbia and AISLIC agree that courts consider "relevant contacts" as part

15

of the relative impairment analysis.  These relevant contacts include: (1) "the place of contracting," (2) "the place of negotiation of the contract," (3) "the place of performance," (4) "the location of the subject matter of the contract, and" (5) "the domicil, residence, nationality, place of incorporation and place of business of the parties."  *Stonewall*, 14 Cal. App. 4th at 646, 17 Cal. Rptr. 2d 713 (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188).  In addition, courts "also 'consider[] each jurisdiction's relevant contacts with . . . the incident involved in order to compare the genuine interest of each jurisdiction in having its laws applied.'"  *Costco*, 472 F. Supp. 2d at 1198 (quoting *Sierra-Bay Fed. Land Bank Ass'n v. Superior Court*, 227 Cal. App. 3d 318, 331, 277 Cal. Rptr. 753 (1991)).

The relevant contacts to Washington are straightforward.  Gordon Trucking is a Washington corporation.  Its principal place of business is in Washington.  Furthermore, Gordon Trucking's insurance broker is a Washington insurance brokerage firm that negotiated, placed and received Columbia's policy at its office in Tacoma, Washington.  This policy bore a stamp indicating compliance with Washington law.

In contrast, Columbia's contacts with California are minimal at best.  Columbia is an Illinois corporation.  Moreover, Columbia's brokerage firm was located in Chicago, Illinois, and Columbia does not claim that any negotiation or activity related to placing the policy occurred in California.

Despite the fact that the place of contracting, the place of negotiating, and the place of incorporation and place of business of the parties all weigh in favor of Washington, Columbia argues that California law should apply because the place of performance, the location of the subject matter of the contract, and the location of the incident involved all weigh more heavily in favor of applying California law.  Opp'n 13-15.  Columbia relies principally on a California Court of Appeal decision to support its position.

In *Stonewall*, a Wisconsin based battery manufacturer sought to have Wisconsin law apply in a suit brought by a plaintiff injured in California.  14 Cal. App. 4th 637, 17 Cal. Rptr. 2d 713 (1993).  In determining which state had more relevant contacts, the court stated that when "a casualty insurance contract is in dispute, particular importance is placed on the location of the subject matter of the contract, i.e. the location of the insured risk."  *Id.* at 646 (citations omitted).

16

The court then went on to state that "[w]here a multiple risk policy insures against risks located in several states, it is likely that the courts will view the transaction as if it involved separate policies, each insuring an individual risk, and apply the law of the state of principal location of the particular risk involved." *Id.* at 646-47 (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193 cmt. f). After noting that the insured's primary insurance policy, which the excess insurer policy incorporated, contained individual amendatory endorsements for eleven different states, the court held that the parties would reasonably expect that the insured's right to indemnity might be governed by the state where the cause of liability occurred. Because the defective battery that gave rise to the underlying claim was manufactured in California and caused injury in California to a California resident, the court applied California law.

Columbia argues the same reasoning should apply here. Opp'n 13-15. Although Gordon Trucking is a Washington corporation, Gordon Trucking also has several hundred employees based in California. Gordon Dep. 16. Moreover, many of its 1,300 trucks carry loads originating in or destined for California. *Id.* 12. In 2007, approximately one-quarter of loads hauled by Gordon Trucking trucks came from or went to a California location. The specific truck involved in the *Bianchi* action was carrying a load from a California location to another California location. *Id.* at 17. According to Columbia, these facts show that Gordon Trucking transacted for a multiple risk policy and that California law should apply. Opp'n 14.

Although Columbia correctly points out the similarities between this case and *Stonewall*, the Court finds that the *Stonewall* holding does not apply here for four reasons. First, the same section of the Restatement relied upon by the court in *Stonewall* contains another comment that leads to a different result in this case: "There may be no principal location of the insured risk in the case of contracts for the insurance of things, such as ships, trucks, airplanes and railroad cars, that are constantly on the move from state to state." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193 cmt. a. When that is the case, "the location of the risk can play little role in the determination of the applicable law." *Id.* In fact, the court in *Stonewall* noted that its approach would not always be appropriate and cited to the Restatement section quoted above as an example. *Stonewall*, 14 Cal. App. 4th at 648 n.7.

United States District Court
For the Northern District of California

Second, in contrast to the primary insurance policy in *Stonewall*, Gordon Trucking's primary insurance policy only contains Washington coverage forms and Washington policy conditions.  Mot. for Summ. J. 20.  A Southern District of California court found this factual distinction significant when it refused to apply the *Stonewall* court's reasoning.  *Costco*, 472 F. Supp. 2d at 1206.  Even though the policy at issue covered nationwide activities, the *Costco* court held that the parties could not reasonably have expected the law of multiple states to govern a policy containing only a single state specific endorsement.  *Id.*  Columbia presented no evidence that the insurance policy Great West issued to Gordon Trucking, which Columbia's policy incorporated, contained any state specific endorsements.  Moreover, Columbia's policy itself contains a stamp indicating compliance with Washington law.

Third, even though Bianchi, the claimant in the underlying case, is a California resident, he has already been compensated.  California's interest in protecting him is, therefore, minimal.  *See Costco*, 472 F. Supp. 2d at 1206 (holding that "[w]ho cuts the check is considerably less important" when disputing insurers are both capable of satisfying a judgment).

Finally, the court in *Costco* identified a general policy preference among numerous jurisdictions that one state's law should govern an insurance agreement.  472 F. Supp. 2d at 1205 (citing *Md. Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 153 (2d Cir. 2003); *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 587 (6th Cir. 2004); *Fallon v. Superior Chaircraft Corp.*, 884 F.2d 229, 234 (5th Cir. 1989); *Lapham-Hickey Steel Corp. v. Prot. Mut. Ins. Co.*, 166 Ill. 2d 520, 527, 211 Ill. Dec. 459, 655 N.E.2d 842 (1995)).  To hold that Columbia's policy is potentially governed by the law of every state in which Gordon Trucking's trucks travel would contradict this policy.

For these reasons, the relevant contacts also weigh in favor of applying Washington law.

### 4. Summary

As stated, the purpose of this lengthy discussion was to determine which state's law "most appropriately applies to the issue involved."  *Bernhard*, 546 P.2d at 720-21.  Although an automobile accident involving a California citizen and a truck traveling from one California site to another gave rise to this litigation, the current issue is not one of liability.  The *Bianchi* trial has already concluded, and Gordon Trucking's liability is fixed.  In fact, Bianchi has already been fully

18

compensated.  The current dispute is over how to enforce Columbia's insurance policy, which it issued to Gordon Trucking before any accident occurred.  This insurance policy was delivered to a Washington brokerage firm, bore a stamp required by Washington law, and incorporated an underlying policy that contained Washington coverage forms.  It insures a Washington corporation that does almost thirty-percent of its business through Washington and maintains around 800 of its approximately 2,000 employees in the state of Washington.  Columbia is an Illinois corporation that used an Illinois brokerage firm to negotiate and place its policy with Gordon Trucking.  Thus, the fact that the underlying accident occurred in California bears little connection to the current dispute.  California, therefore, has much less interest in the dispute between Columbia, Gordon Trucking, and AISLIC than Washington.  As a result, this Court holds that Washington law more appropriately applies.

### B.  Actual Prejudice Is Required

The parties agree that under Washington law, the insurer must demonstrate "actual prejudice" before it can enforce an NVP provision.  *See Pub. Util. Dist. No. 1*, 881 P.2d at 1029.

### C.  Burden of Showing Actual Prejudice

None of the parties dispute that "[t]he burden of showing the actual prejudice is on the insurer, and it is a factual determination."  *Id.* at 1029 (citations omitted).  Thus, Columbia has the burden of showing the fact finder that it was actually prejudiced by Gordon Trucking's actions.

### D.  Breach of Duty to Investigate

AISLIC argues that under Washington law,[7] an insurer has a duty to reasonably investigate an insurance claim and that a breach of this duty exposes an insurer to tort liability for bad faith.  Mot. For Summ. J. 22-23.   According to ASILIC, Columbia failed to conduct a reasonable investigation as a matter of law.  *Id.* at 24.

"Insurance companies must conduct their relations with their insureds in good faith."  *Coventry Assocs. v. American States Ins. Co.*, 961 P.2d 933, 935 (Wash. 1998).  "The duty to act in good faith includes the duty to reasonably investigate a claim."  *Aecon Bldgs., Inc. v. Zurich North*

---

[7] In its motion, AISLIC provides both California and Washington authorities to support its arguments.  Because this Court has already determined that Washington law applies to the enforcement of Columbia's policy, this Court will consider what duty Columbia had to investigate under Washington law.

Case No.: 09-CV-05441-LHK

*America*, 572 F. Supp. 2d 1227, 1235 (W.D. Wash. 2008).   "In order to establish bad faith, an insured is required to show the breach was unreasonable, frivolous, or unfounded.   Whether an insurer acted in bad faith is a question of fact." *St. Paul Fire and Marine Ins. Co. v. Onvia, Inc.*, 196 P.3d 664, 668 (Wash. 2008) (quotations and citations omitted).   Nevertheless, "where 'reasonable minds could not differ as to a finding that the adjuster's incuriousness and her failure to inquire further' into the claim constitutes a failure to conduct a reasonable investigation of the claim, summary judgment is warranted." *Aecon*, 572 F. Supp. 2d at 1236 (citing *Bryant v. Country Life Ins. Co.*, 414 F. Supp. 2d 981, 1000 (W.D. Wash. 2006)).

AISLIC claims that summary judgment on Columbia's failure to conduct a reasonable investigation is warranted.   AISLIC accurately points out that Columbia conducted little investigation after receiving Gordon Trucking's notice of loss letter.   Columbia's employee spent less than an hour reviewing the notice letter and the attached police report.   He never contacted Great West, Gordon Trucking, or Gordon Trucking's outside counsel.

Although Columbia's investigation into the *Bianchi* matter at the time it received the notice of loss letter was less than thorough, it is unclear why this constitutes a breach of the duty to investigate as a matter of law.   The duty to reasonably investigate a claim appears to have two component duties.   One of these duties requires an insurer to "act with reasonable promptness in investigation and communication with their insureds following notice of a claim and tender of defense." *St. Paul Fire*, 196 P.3d at 669.   Columbia's response to Gordon Trucking's notice of loss letter was prompt.   In just over a week, Columbia responded to Gordon Trucking's letter.   The response letter informed Gordon Trucking that Columbia was designating the matter as record only and requested that Gordon Trucking share with Columbia any future information indicating that Columbia's policy may be impacted.   Given that Columbia was not the primary insurer, that Gordon Trucking already had representation through Great West, and that Gordon Trucking's letter promised further information, this response to Gordon Trucking's initial communication appears reasonable.

The other related duty requires "an insurer [to] make a good faith investigation of the facts before denying coverage." *Indus. Indem. Co. of the Northwest, Inc. v. Kallevig*, 792 P.2d 520,

526 (Wash. 1990).  AISLIC argues that because the notice of loss constituted a tender of a claim to Columbia, *see* Dkt. No. 72 ("Reply Br."), at 14 (citing Kaplan Decl., Ex. 2, at 46:17-19), Columbia's lack of investigation following receipt of the letter violated its duty to make a good faith investigation.  Although "it is an insurer's affirmative duty to investigate a claim before it denies coverage, not the insured's duty to continue supplementing the record to an uninquisitive insurer," *Aecon*, 572 F. Supp. 2d at 1237 (citation omitted), Columbia's response to Gordon Trucking's notice of loss did not constitute a denial of coverage.  Rather, it was a notification that Columbia did not anticipate its policy limits would be affected by the *Bianchi* matter.  Columbia did not deny coverage until after it was notified of the jury verdict.  Before this denial, Columbia requested and received a pre-trial report, a post trial report, and other existing reports.  It was not until Columbia analyzed and considered these reports, along with the language of the policy it issued Gordon Trucking, that Columbia denied Gordon Trucking's coverage based on the NVP provision.  Given the clear language of the NVP provision, it is difficult to see how Columbia's denial of coverage was "unreasonable, frivolous, or unfounded" as a matter of law.

Additionally, AISLIC claims that if Columbia had conducted a reasonable investigation, it would have monitored the *Bianchi* action and would not be in the position it is now.  *See* Mot. for Summ. J. 25.  Even though this argument has merit, reasonable minds could still differ as to whether Columbia's overall conduct before denying coverage was done in good faith.  This finding is supported by the fact that AISLIC's initial response to the notice of loss letter was similar to Columbia's.  In AISLIC's initial response, it informed Gordon Trucking that it was closing its file on the matter and that, in its opinion, the claim would not impact AISLIC's coverage.  It was not until AISLIC received further information that it changed its position on the matter.  Moreover, Great West also initially believed that the *Bianchi* claim would not impact any of the excess insurers.  *See* Collins Decl., Ex. I.

Because reasonable minds could differ as to whether Columbia's conduct constituted an unreasonable, frivolous, or unfounded breach of its duty to investigate in good faith, the determination should be left to the fact finder.

///

Case No.: 09-CV-05441-LHK

United States District Court
For the Northern District of California

**E.  Judicial Notice**

Columbia requests that this Court take judicial notice under FED. R. EVID. 201 of certain pleadings filed in this case.  Dkt. No. 70.  This Court "may take judicial notice of court filings and other matters of public record."  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (citation omitted).  Such notice, however, does not signify that the Court accepts the facts contained therein as true.  *See Rezentes v. Sears, Roebuck & Co.*, ___ F. Supp. 2d ___, 2010 WL 3001921, *8 (D. Haw. July 30, 2010) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001)).  Rather, it simply notices that the cited documents were in fact filed with the Court.  Although it is not clear why Columbia needs judicial notice of documents filed in this action, because AISLIC did not oppose this form of judicial notice at oral argument, the Court grants Columbia's request.

## IV.  CONCLUSION

For the foregoing reasons, AISLIC's motion for partial summary judgment is GRANTED in part and DENIED in part.  The Court holds that (1) Washington law governs the enforcement of Columbia's policy; (2) Columbia must show actual prejudice to rely on the NVP provision to avoid payment; (3) Columbia has the burden of showing actual prejudice; and (4) Columbia did not breach its duty to investigate as a matter of law.

Columbia's request for judicial notice, as clarified above, is GRANTED.

**IT IS SO ORDERED.**

Dated: December 13, 2010

_____

LUCY H. KOH
United States District Judge

Case No.: 09-CV-05441-LHK